IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| BRADFORD L. TILGHMAN,<br>Plaintiff | * |
| | * |
| V. | CIVIL ACTION NO. RWT-08-2269 |
| | * |
| MR. WILLIAM CATON, et al.,<br>Defendants | * |

\*\*\*\*\*\*

**MEMORANDUM OPINION**

This pro se civil rights action, filed on August 28, 2008, concerns Plaintiff's allegation that he was improperly terminated from his job assignment and denied other job assignments due to the retaliatory conduct of Defendants. (Paper No. 1). Now pending in this case is a Motion to Dismiss or for Summary Judgment filed by Defendants which shall be construed as a Motion for Summary Judgment. (Paper No. 11). Plaintiff has filed a Response in Opposition to that Motion (Paper No. 13), and the case is ready for dispositive review. After review of the record, the Court finds a hearing is not necessary. See Local Rule 105.6 (D. Md. 2008).

**I. Background**

The following facts are not in dispute. Effective October 7, 2005, Plaintiff, a Maryland Department of Corrections inmate, was assigned as a maintenance worker, an "outside the fence" work detail. (Paper No. 11 Ex. 1, 2, 3). On June 8, 2007, a request was made to remove Plaintiff from his job assignment after Plaintiff's wife had attempted to drop tobacco at Plaintiff's work site. (Paper No. 11 Ex. 4). Plaintiff was reclassified from his maintenance job to a sanitation job. Thereafter, Plaintiff was denied assignment as a library aid. (Paper No. 11 Ex. 5). The parties agree that Plaintiff's removal from his maintenance job and the denial of assignment to the library were based on the tobacco incident. (Paper No. 11 Ex.1, 2, 6). On May 2, 2008,

Plaintiff's case manager recommended Plaintiff for pre-release status. The recommendation was not approved. (Paper No. 11 Ex. 5, 8, 9).

Plaintiff requested reclassification to another job detail on June 10, 2008. (Paper No. 11 Ex. 8, 10). The request was approved and Plaintiff was assigned to the Central Kitchen detail. (Paper No. 11 Ex.1 a, 2, 3, 5). Plaintiff was transferred to Poplar Hill Pre-Release Unit on November 25, 2008. (Paper No. 11 Ex. 15).

Plaintiff did not receive an institutional infraction for the tobacco incident, but criminal charges were filed against him that were subsequently nolle prossed. Plaintiff states that since the incident he has suffered retaliation with regard to his job and security classifications. (Paper No. 1). Plaintiff claims that it was improper for Defendants to use the allegations of involvement in the tobacco incident to deny him institutional job assignments or delay his move to pre-release status. Id.

## II. Standard of Review

A Motion for Summary Judgment is governed by Fed. R. Civ. P. 56(c), which provides that:

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

2

Anderson v. Liberty Lobby, Inc., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 525 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the non-movant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Bouchat, 346 F.3d at 526 (internal quotation marks omitted) (quoting Drewitt v. Pratt, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986)).

### III.  Analysis

Prisoners do not have a constitutional right to access programs or to be housed in one prison versus another. "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." Meachum v. Fano, 427 U.S. 215, 224 (1976).

To show a civil rights violation with respect to a prison job assignment Plaintiff must prove that the actions taken against him impacted on the exercise of a constitutionally protected right. Prisoners, however, do not have a constitutionally protected right to work while incarcerated, or to remain in a particular job once assigned. See Awalt v. Whalen, 809 F. Supp.

414, 416-17 (E.D. Va. 1992); Altizer v. Paderick, 569 F. 2d 812, 815 (4th Cir. 1978). Removing a prisoner from a job simply does not rise to the level of cruel and unusual punishment prohibited by the Eighth Amendment. See Williams v. Meese, 926 F.2d 994, 998 (10th Cir. 1991).

To prevail on a claim of retaliation, Plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Thus, any attempt in this case to state a retaliation claim based on the termination of a prison job must fail, because there is no right to a prison job.

Further, Plaintiff has no due process right in the retention of a prison job. In the prison context there are two different types of constitutionally protected liberty interests which may be created by state action. The first is created when there is a state-created entitlement to an early release from incarceration. See Board of Pardons v. Allen, 482 U. S. 369, 381 (1987) (state-created liberty interest in parole); Wolff v. McDonnell, 418 U. S. 539, 557 (1974) (state-created liberty interest in good conduct credits). The second type of liberty interest is created by the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U. S. 472, 484 (1995). Following the reasoning of the Supreme Court in Sandin, it appears that no liberty interest is implicated in decisions relating to prison job assignments or work release. See Callender v. Sioux City Residential Treatment Facility, 88 F.3d 666, 669-70 (8th Cir. 1996); Lee v. Governor, State of New York, 87 F.3d 55, 58 (2nd Cir. 1996); Dominique v. Weld, 73 F.3d 1156, 1160-61 (1st Cir. 1996).

Accordingly, the Motion for Summary Judgment will be granted. A separate order follows.


July 21, 2009                                                  /s/
                                                  ROGER W. TITUS
                                                  UNITED STATES DISTRICT JUDGE